1. The charge of the court on accident was authorized under the pleadings and evidence and was not error as contended in special ground 1 of the motion for a new trial.
2. The excerpts from the charge as contained in special grounds 2, 3, 4, 5, and 6 of the motion for a new trial were adjusted to the pleadings and the evidence, and these grounds of the motion are without merit.
3. The verdict for the defendant was authorized by the evidence, no error of law appears, and the court did not err in overruling the plaintiff's motion for a new trial.
 DECIDED OCTOBER 22, 1948. REHEARING DENIED NOVEMBER 11, 1948.
William Warren sued the Georgia Southern Florida Railway Company for damages, in the City Court of Macon, on account of personal injuries allegedly sustained while employed by the defendant as a laborer.
The allegations of the petition are substantially as follows: *Page 887 
On September 25, 1945, the plaintiff was in the employ of the defendant as a laborer, his duties including those of pushing heavily loaded hand trucks from the platform of the defendant's freight house, in Macon, Georgia, across replaceable runways and into freight cars in order to load the freight cars. He was so engaged together with another employee in such a manner that he was unable to see the board runway across which they were to push a truck. Above the door of the freight car to which the runway led was a numbered placard which served as notice to the plaintiff and other laborers that the runway was in good condition and safe, and that a loaded freight truck could be safely pushed across the runway and into the freight car without the necessity of an inspection by the plaintiff or other laborers. When the plaintiff and another laborer pushed the hand truck onto the runway it gave way and failed to support the hand truck, which slipped off. The plaintiff was thrown between the platform and freight car and was severely injured. The plaintiff's injuries are described as "concussion of the brain; internal injuries to his chest and left side; injuries to his left leg and left arm; partial paralysis to his left side and left leg; numerous bruises and abrasions over his entire head and body." Specific acts of negligence charged were: "(a) In that they negligently placed a defective runway between said platform and said freight car over which petitioner's duties required him to push said heavily loaded hand truck. (b) In that at said time and place they negligently failed to warn petitioner that said runway was defective and would not support said heavily loaded hand truck which he was pushing. (c) In that they negligently furnished petitioner with an unsafe place to work."
The material portions of the petition relating to the alleged injuries and the negligence of the defendant were denied by the defendant in its answer to the petition.
The petition was amended substantially as follows: At the time of the alleged injuries the plaintiff was pushing a hand truck, on the left rear thereof, and the same was turned east and to the right at the point as indicated by the placard at the car door, and the defective and insufficient gangboard over which the truck was to travel was obscured from his view by the load on the truck. The platform was not on the same level with the *Page 888 
freight car floor, and there was a descent of several inches between the platform and the car door. At the time the defective and insufficient gangboard gave way James Early negligently swung the rear of the truck towards the plaintiff, thereby increasing his peril and contributing to his injury. The plaintiff, as an employee of the defendant, was engaged in interstate commerce at the time he received the injuries, within the contemplation of the Federal Employers' Liability Act. It was alleged that the plaintiff was free from fault; and it was further alleged that the defendant was negligent: "(d) In that the said James Early negligently failed to aid petitioner in controlling said truck at said time and place. (e) In that the said James Early negligently caused the burden of said load to be thrown against the petitioner."
The answer of the defendant was amended by adding that, "If plaintiff received any injuries while working for defendant on September 25, 1945, such injuries were not due to any negligence of the defendant, but were occasioned by his stepping off of a platform or a gangplank upon which he was working, and were the result of a pure accident."
On the trial of the case the plaintiff, William Warren, testified substantially that: He was 58 years old, and had been working for the defendant about 3 years at the time he received the injuries on September 25, 1945, and had previously engaged in similar work loading ships in Jacksonville. At the time of the injury he was on the right-hand side of the truck and James Early, another employee, was on the left. As the truck was going into the car the gangboard, which was a good gangboard, bucked, and threw him off and hurt his side and leg. James Early swung hard and heavy and that caused all the burden to be thrown against the plaintiff and threw him off the platform. The hand trucks, or "floats," are about 26 inches wide at the wheelbase, and 30 inches wide at the body, and are about 6 1/2 feet long. The platform is about 56 or 59 inches from the ground. The truck was loaded with "fuse plant stuff" and was a "pretty good load." The truck weighed about 457 pounds and the load weighed about 1500 pounds. He was in the hospital 2 days. At the time of the injury he was making $35 to $40 per week, including Sunday work. On account of the injury he can not work *Page 889 
as a day laborer now. He hurts from head to toe on his left side, and can not walk good. He was put back in the same work by the defendant, after receiving the injuries, but was unable to do this work. If the gangboard had not bucked he would not have fallen. On cross-examination he identified his signature on certain records, indicating that he worked for the defendant 55 1/2 hours during the week ending September 30 (1945), 48 hours during the week beginning October 1, 48 hours for the week ending October 13, 43 1/2 hours for the week ending October 20, and so on until December 7, 1945. He stated this was light duty, and that he was not paid as much because he did not work on Sunday. He "laid off" on December 7 because he was sick, and has not had any work since.
Dr. Sam Patton, a practicing physician, and a witness for the plaintiff, testified that: He first examined the plaintiff on June 9, 1947, a few days before the trial. At that time he had some loss of co-ordination of the movements of his legs, and complained of a numbness in both arms and both legs, more marked in the left leg. It was possible that these findings were such as could result, normally and logically, when a man of the size of the plaintiff, with another, was handling a four-wheeled hand truck with about a ton load on it, and lost control of it so that it threw him violently between the platform and the boxcar, or between the truck and the car. He believed the condition would last for at least a period of 12 months from the time he examined him. He stated that if 1 1/2 years had intervened between the time of the alleged injury and the time he examined him, and if he had worked for 3 months after the alleged injury, doing the same work, there were a thousand other things that could have caused the lack of co-ordination. It might be trauma, or formation of scar tissue infringing on the nerve tissue, or it might be age or almost any other disease of a man of his age, and that he did not find lack of co-ordination frequently in a man 57 years old; it was usually in older men. It was not found more in colored than in white men. There is no distinction between the races. The most probable cause, in so far as he had been able to determine, were the alleged injuries.
Dr. Frank F. Jones, an osteopathic physician, and a witness for the plaintiff, testified that: He had examined the plaintiff on *Page 890 
the day before the trial. He found he had evidently had what he called a sprained sacroiliac joint, and the movement of the joint was limited, and the muscles up the spine attached to the flat bone at this joint were very stiff and rigid. His left leg did not have normal movement. At the joint the sciatic nerve emerges from the backbone, and from external appearances and watching him walk, this nerve was in an irritated or inflamed condition. He examined his heart, found no trouble indicated from his heart sounds, but did find his pulse was only 52 beats to the minute, about 20 below that of an average man his age. The injuries described by the plaintiff to this witness during the examination would produce some pain, especially in the leg and in the foot. It appeared he had at one time had a shock to the joint that had affected his nerves, and this could have been caused by the alleged injuries. He stated that, assuming the condition had existed since September 25, 1945, this injury, or any other injury to the joints, if it were going to be cured by nature, would be cured in a few years. He later stated that the plaintiff was injured permanently, or for a long time. The injury would incapacitate him for day labor, and perhaps injure his mentality and ability to think and work. When this witness examined the plaintiff he had him walk across the room and the witness stated that he did not appear to be able to walk in a normal condition, but appeared like a man "more or less tight in the middle." Assuming this condition had come on suddenly, he stated that it could have been caused from an event similar to that which is the basis of this action, and that only a slight injury could have created the condition. He found no symptoms of a concussion of the brain, unless one could say it was slowness of the workings of plaintiff's mental powers, and there was no paralysis of the left side or left leg, just an inability to use the same properly. During his examination of the plaintiff he noticed that he was extremely slow in answering questions, and appeared lacking in emotions. "His mental response seemed to be more or less dead."
Dr. J. C. Anderson, employed as a surgeon and physician by the defendant, and appearing as a witness for the defendant, testified that: On or about September 25, 1945, he examined the plaintiff in the emergency room of the Macon Hospital, and that he had some little bruises or slight abrasions on the side of his leg, *Page 891 
and some on his chest and face. Plaintiff at that time stated to him that he "was rolling steel truck from the platform to the car and missed the gangplank and fell, feet first, to the surface below between the car and the platform." He found no evidence of a brain concussion, injuries to the sciatic nerve, paralysis, or lack of co-ordination. His injuries did not warrant hospitalization, but, as he appeared sleepy and dazed, as if under the influence of a drug, he was kept in the hospital 2 days for observation. He checked at the hospital and was unable to find that anyone had given the plaintiff any drug that would create this condition. He saw the plaintiff again on the 1st, 5th, 8th, and 12th of October, 1945, and he dismissed him on October 12. After he left the hospital, and on the above dates, there was apparently nothing wrong with him, other than soreness and slight evidence of abrasions and bruises. When he left the hospital, Dr. Anderson told him he could go back to work, his instructions being for him to return to light duty until he dismissed him. There were never any symptoms indicating the need of an X-ray and none was made.
James Early, witness for defendant, testified: "I was trucking freight on September 25, 1945. I recall that day that William Warren fell. I placed the board into that car that morning. William Warren was working with me that day. By some means or another, as we entered into the car, the one we loaded, in making the effort to turn, to push in as we are supposed to from the platform into the car, some way or another he missed the gangboard and missed the car. He never put his foot on the gangboard at all; he missed the whole outfit. He didn't strike the board nor the car. His feet went between the platform and the car. The gangboard didn't buckle to my knowings, it didn't buckle or give, nor either did the cleat move. It stayed there the balance of the day and was still cleated. That is a sign it was a good board. If it's overloaded any of them will buck. This one didn't have too much weight on it that morning. If it's actually put in the car like it should be put in there, it won't buck to amount to anything. If it's actually put in the car, it won't give enough to have any accident, because the upper edge of it has enough rest on the car, if it give a least bit it will stay in the car. If there is a car door open and the one on the other side *Page 892 
turns through there the truck won't go wild; you are supposed to hold the float and cut it around in the car. If I didn't push my side, it would push it on me. As to if I was pushing toward him when we were turning to the right, going north, going in the car the way we were going that morning, no . . we get behind the float and push it together. We would swing together. I pushed it in like I pushed all the rest of them. I didn't try to push him around or try to push the float where it would push him off the board. We continued to use the same board the rest of the day."
J. D. Allen Jr., a transfer clerk for the defendant and witness for the defendant, testified that: On the morning of the injury the plaintiff and James Early were in his gang, and James Early came and told him that plaintiff had stepped off the gangboard and had been hurt, and he first saw him in the negroes' dressing room, where he was lying on a bench. He tried to arouse him, and plaintiff raised his head, his eyes rolled around, and he said "Huh?," and "dropped back like he was in a faint." He was carried to the hospital. Witness recalled that after this he came back to work as a trucker and was still working on December 6, 1945, when witness was promoted from transfer clerk to transfer foreman. Witness did not know why plaintiff stopped work on December 7 or 8, but recalled that 3 or 4 days later plaintiff called witness and told him he was sick.
J. D. Avery, an assistant transfer foreman at the Macon freight house of the defendant, and a witness for the defendant, testified that: He kept a time book on employees of the defendant. From this time book he identified entries indicating that on September 25, 1945, the plaintiff was given credit for 8 hours of work, and for 8 hours of work on September 26, 27, and 28, and that he worked 8 hours each day of the first two weeks in October, Sundays excepted. He stated that although his time appeared on the book for September 25, 1945 et seq., he was actually not at work for 2 or 3 days, and that although his occupation was shown as a trucker this did not necessarily mean he was doing this work when he was hurt, or afterwards, and that he could have been on light duty, folding papers, or picking up papers, in the front office, but that he could not recall whether he saw plaintiff doing this type of work or not.
At this point in the trial the plaintiff was recalled to the stand, *Page 893 
and testified that he went to work for defendant on December 7 (1945), and was sent by someone for the defendant to Dr. Anderson's office, and that Dr. Anderson told him to go back to Mr. Smith, and that he would tell Superintendent Smith, and that Mr. Smith told him, "Will, Dr. Anderson says you are not able to work; I can't use you. Him and Mr. Allen were together. They let me work. Yes sir, they let me go on December 7th."
It was then stipulated that if Dr. Anderson were present, he would testify that, to his recollection, he never saw William Warren from October 12, 1945, until the trial.
Documentary evidence introduced by the defendant indicated that plaintiff worked regularly for defendant, occupation listed as a trucker, from September 22, 1945, until October 31, 1945.
Pictures of a truck such as was in use by the plaintiff at the time of the injury, and of the platform and cars where the injury occurred, were introduced in evidence by the plaintiff.
The jury found for the defendant, and judgment was entered accordingly. The plaintiff's motion for a new trial was denied, and the case is here on exceptions to that judgment.
1. Error is assigned in special ground 1 of the motion for a new trial on the following charge of the court: "I charge you that accident means an event which takes place without one's foresight or expectation, an event which proceeds from an unknown cause and therefore, not expected. Now, should you find the plaintiff's injuries resulted from an accident, then the plaintiff can not recover." There is no contention that the above excerpt from the charge is not correct as an abstract principle of law, but plaintiff in error contends that there was not the slightest evidence that the injury to the plaintiff was the result of an accident, nor any evidence from which any reasonable inference of an accident could be drawn, and that the charge was confusing, misleading, and distracting to the jury. The defendant had pleaded accident and, according to James Early, the only eyewitness other than plaintiff in so far as is indicated by the record, the gangboard was good and did not buckle, witness did not swing the truck too hard, and plaintiff, by some means or another, missed the gangboard *Page 894 
and the car, and fell to the ground below. This witness said: "He never put his foot on the gangboard at all; he missed the whole outfit. He didn't strike the board nor the car. His feet went between the platform and the car. The gangboard didn't buckle to my knowings, it didn't buckle or give, nor either did the cleat move. It stayed there the balance of the day and was still cleated. That is a sign it was a good board"; and later he said: "I pushed it in like I pushed all the rest of them. I didn't try to push him around or try to push the float where it would push him off the board. We continued to truck freight into the car, somebody else helping me. We continued to use the same board the rest of the day." The plaintiff had already testified that the gangboard was a good one. The testimony of James Early, when considered together with that of the plaintiff, is sufficient to authorize the jury to find that there was no negligence on the part of the defendant which caused the injuries, and that the event was an "accident" as pleaded by the defendant. Accordingly, the charge of the court on "accident" was adjusted to the pleadings and evidence, and was not error as complained of in special ground 1 of the motion for a new trial. See Richter v.Atlantic Co., 65 Ga. App. 605, 608 (4) (16 S.E.2d 259), and citations.
2. In special grounds 2 and 4 of the motion error is assigned on the following charge: "I charge you that though the plaintiff may have fallen from the gangboard between the platform and the car, this would not authorize you, nothing more appearing, to presume that the defendant was negligent in any manner"; and in special grounds 3 and 5 of the motion error is assigned on the charge: "I charge you that though you find the board being used by the plaintiff buckled, that fact alone without more appearing, would not authorize you to find for the plaintiff"; and in special ground 6 of the motion error is assigned on the above two excerpts of the charge combined. The charge excepted to in these grounds of the motion pointed out to the jury that the mere proof of certain acts, standing alone, would not constitute negligence on the part of the defendant, and inferentially pointed out that there must be a causal connection between certain events and the injuries on which the action is based in order for such events to constitute actionable negligence. Immediately following the excerpt *Page 895 
from the charge shown above the court said: "Now, if you find, by a preponderance of the evidence, that the plaintiff suffered injuries by reason of the negligence of his fellow employee, or by reason of not being provided a reasonably safe place for him to work, as alleged in the complaint as amended, and you find such negligence, if any, proximately caused, or was a contributing cause of plaintiff's injuries, you would find your verdict for the plaintiff. I charge you that if you find the defendant was not negligent in either of the particulars as pleaded, you would find for the defendant. I charge you that if you find the defendant or its employee other than the plaintiff was negligent in some particular, as alleged, but you further find such negligence was not the proximate cause of the plaintiff's injuries and was not a contributing cause entering into the proximate cause of his injuries, you would find for the defendant. Should you find the sole proximate cause of plaintiff's injuries was the negligence or carelessness of plaintiff, if he was negligent, you would find for the defendant." The charge on which error is assigned in these grounds, when considered in connection with the latter charge above quoted, clearly presented material issues in the case to the jury, and grounds 2, 3, 4, 5, and 6 of the motion are without merit, and the court did not err in overruling these grounds of the motion.
3. The verdict for the defendant was authorized by the evidence, no error of law appears, and the court did not err in overruling the plaintiff's motion for a new trial.
Judgment affirmed. Parker, J., concurs. Felton, J., concursin the judgment.
 *Page 1